348

GEORGE WILLIAMS et al., Appellants, v. LEROY O. PALMER et al., Respondents.

John F. Poole and George D. Higgins for Appellants.

Zeutzius & Steffes for Respondents.

WHITE, P. J.—Plaintiffs, vendors in an installment contract for the sale of real estate, brought an action to "quiet title and foreclose contract" because of the asserted failure of defendants to make the installment payments as required. Defendants by cross-complaint sought affirmative relief. After trial without a jury, judgment was entered that plaintiffs take nothing, that they remove certain clouds existing upon the title to the property in question, and that they convey the property to the defendants and cross-complainants, together with a certificate of title, upon payment by the defendants of the sum of $1,326.81. From such judgment plaintiffs appeal.

Appellants set forth as "points to be determined" the following:

"FIRST: Is it in the power of the Courts to make a new contract for the plaintiff herein, Williams, with a Mr. and Mrs. Jensen, with whom plaintiffs had no contractual relations, or in fact any dealings of any kind or nature? . . . SECOND: Where under the terms of the contract of sale at the termination thereof the vendor is given time to clear up any bonds, liens, or any other encumbrances on the property, can the Court declare nonperformance on vendors' part until such time has been given to make said clearances especially if the purchaser is long delinquent in his payments and refuses to make further payments? . . . THIRD: Can a purchaser of real property, deliberately sell the same property to another at a large profit to himself, with much larger monthly payments received than he pays to his vendor, and sit back and deliberately refuse to make any further payments to his vendor, because his vendee refuses or neglects to make further payments to him? . . ."

Appellants further assert that the evidence does not support the findings, and that the court erred in holding that there had been no forfeiture.

None of appellants' contentions is well founded, as the following résumé of the facts will show.

On October 30, 1941, plaintiffs entered into a written agreement for the sale to defendants of real property in Los Angeles for the sum of $1,900, payable at the rate of $20 or more per month. The agreement contained a provision against assignment by the buyers without written consent of the sellers. It further provided that ". . . the Seller, on receiving the full payments at the times and in the manner above mentioned, agrees to deliver a certificate of title showing the title to be vested in Buyer and to execute and deliver to the buyer or his assigns, a good and sufficient deed of grant, bargain and sale." Payments were duly made under the contract to and including July 10, 1945, at which time there remained an unpaid balance of $1,325.83.

On June 1, 1943, defendants entered into a written agreement with Mr. and Mrs. Jensen to sell them the property on installment payments of $30 per month. In July, 1945, an escrow was opened by defendants and the Jensens at the Los Angeles Escrow Company. Before the escrow was opened, Mr. Palmer had a telephone conversation with Mr. Williams, in which he told Williams that Mrs. Jensen was going to borrow enough money to pay off Mr. and Mrs. Williams in full, and that she would deposit the funds with the escrow company to hold until such time as the Williams' could produce title and deed. Palmer further testified: "And I asked Mr. Williams if that would be all right and he says, 'Now, Lee, you do just as you like on that, it is immaterial to me.' "

On July 24, 1945, the sum of $1,800 was deposited in the escrow with instructions to pay plaintiffs in full upon their conveying a free and clear title to the property. This sum was still on deposit at the time of trial. Two or three days after the deposit had been made, Palmer called Williams and told him that there was enough money deposited with the escrow company to pay off both of them. Palmer then asked Williams if he wanted him to make the monthly payments to him, or whether it would be all right to let the money stay in escrow until Williams could produce title and a deed, at which time all the money would come through. Williams replied, "It really doesn't make any difference, it is immaterial; you do as you like." This conversation was denied by Williams, but this conflict was resolved against him by the trier of fact. No notice of cancellation of the agreement or demand for

monthly payments was made by plaintiffs from July, 1945, until April, 1946.

After the opening of the escrow, a preliminary title report showed several clouds upon the title to the property, some of which had not been removed up to the time of trial of the action. Palmer thereafter had several conversations with Williams asking him about the title to the property, and Williams told him, ''. . . that it was to be on the agenda the latter part of the year.'' It appeared that there was pending an action to foreclose a street improvement bond, as well as an action by plaintiffs and others to set aside a tax sale.

On February 27, 1946, plaintiff Williams opened an escrow with a Bank of America branch in Arcadia. The first that Palmer knew of that escrow was when he received a letter from the bank. Plaintiffs placed a grant deed in this second escrow, but never placed therein a certificate of title. The instructions given by plaintiffs required that defendants deposit the balance of the purchase price in the second escrow, although they knew the funds had been placed in the escrow opened by defendants. Palmer was in the act of getting the money sent from the first escrow to the second escrow in the Bank of America when he was served with a notice of cancellation of the agreement on the one ground of default in payments subsequent to July 11, 1945.

Upon the foregoing facts, the trial court was fully justified in finding, as it did, that plaintiffs waived any breach which they now contend occurred by reason of defendants entering into the agreement of sale with third persons; that defendants never refused to pay any monthly installments demanded; that the failure to pay any monthly installments directly to plaintiffs after July 10, 1945, was fully excusable, and that plaintiffs expressed and impliedly consented thereto. The trial court further found, and correctly, that under the agreement plaintiffs agreed to deliver, upon payment of the full purchase price, a certificate of title and a good and sufficient deed; that shortly after July 10, 1945, defendants tendered the balance of the purchase price with accrued interest, but that plaintiffs failed to deliver a certificate of title or a deed. When plaintiffs finally tendered a deed and demanded performance, they demanded it at a place other than the place of performance provided in the agreement, and the court so found. When plaintiffs opened the second escrow and deposited a deed, they were unable to deliver a good title, and hence were unable to put defendants in default.

The facts, in summary, therefore, are that in July, 1945, plaintiffs were tendered the full amount of the purchase price and consented that the funds remain in escrow to be paid to them upon their compliance with the agreement by delivery of a sufficient deed and certificate of title. In such circumstances, there could be no forfeiture.

Whether the agreement of sale by defendants to the Jensens constituted a breach of the covenant against assignment is immaterial, since the evidence is sufficient to support a finding that plaintiffs waived the alleged breach by accepting payments after knowledge thereof for eight months, and further advised Palmer he did not need to make the monthly payments after the $1,800 had been deposited in escrow. Moreover, the notice of cancellation did not specify this breach as a ground of forfeiture. That in such circumstances the asserted breach is waived is well settled. (See 12 Cal.Jur., ''Forfeitures,'' pp. 641, 642.)

It is also obvious that defendants could not be declared in default for failure to make monthly payments after July, 1945. Under the provisions of the agreement they had the right to pay the balance of the purchase price at any time. Furthermore, plaintiffs acquiesced in the opening of the escrow and the deposit of the funds necessary to pay them in full. From then on, plaintiffs were in default, for it was their duty by the express provisions of the contract ''to deliver a certificate of title showing the title to be vested in Buyer and to execute and deliver to the Buyer or his assigns, a good and sufficient deed of grant, bargain and sale.''

The equities are entirely with respondents. The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.